UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **RAYMOND E. HECK, DOUG HAMLEY CHARLES MOORE, JOSEPH MCKEARN and ALLEN RICHARDSON** | **CIVIL ACTION** |
| **VERSUS** | |
| | **NO. 07-21-C-M2** |
| **KENNETH K. BUHLER and WAYNE TRICHE** | |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 10 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 10 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in chambers in Baton Rouge, Louisiana, November 6, 2007.

_____
**MAGISTRATE JUDGE CHRISTINE NOLAND**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| RAYMOND E. HECK, DOUG HAMLEY<br>CHARLES MOORE, JOSEPH<br>MCKEARN and ALLEN RICHARDSON<br><br>VERSUS<br><br>KENNETH K. BUHLER, ET AL | CIVIL ACTION<br><br><br><br>NO. 07-21-C-M2 |

## MAGISTRATE JUDGE'S REPORT

This matter is before the Court on the Motion for Partial Summary Judgment Pursuant to Fed. R. Civ. P. 56 (R. Doc. 46) filed by defendant Wayne Triche ("Triche"). Plaintiffs, Raymond E. Heck, Doug Hamley, Charles Moore, Joseph McKearn, and Allen Richardson (collectively "plaintiffs"), have filed an opposition to this motion. (R. Doc. 58).

## FACTS & PROCEDURAL BACKGROUND

This suit was filed by the plaintiffs on January 10, 2007. In the original and first and second amended complaints, it is alleged that Triche, and his codefendants, Kenneth Buhler ("Buhler") and Daryl Dearmond ("Dearmond"), conspired and participated in fraudulent conduct in order to induce the plaintiffs to loan Buhler and his business, Antiques Investment Group, LLC ("AIG"), approximately $335,000.00 to support AIG's operations. Plaintiffs contend that Triche drafted the prospectus used to solicit their investments and that he made various misrepresentations in that prospectus designed to "impress prospective investors" with Buhler's financial success in the antiques and auction business, even though Triche was aware that Buhler was experiencing "severe financial difficulties." They further contend that, contrary to the representations in the prospectus, Triche instructed Buhler to first place the plaintiffs' invested funds in the account of AIG  and then

1

transfer those funds out of the account to pay Buhler's business and personal debts, which Buhler did.

Lastly, plaintiffs allege that, pursuant to Triche's advice, Buhler granted a security interest in the same antiques, collectibles and quality reproduction inventory pool in which plaintiffs purportedly had a security interest relative to their investment contracts (*i.e.*, the AIG inventory pool) to State Bank & Trust Company ("State Bank") in exchange for a loan, without the knowledge or consent of plaintiffs.  Subsequently, Buhler and all of his entities, including AIG, defaulted on their loans with State Bank, and State Bank filed a petition for executory process and ultimately seized all of the antiques, collectibles and inventory pool of AIG.  State Bank then sold that inventory and thereby stripped AIG of all of its assets, leaving it bankrupt, and as a result, the plaintiffs lost all of the funds they had invested.

Plaintiffs contend that the conduct discussed above is in violation of federal and state securities laws and constitutes state law breach of contract, negligent misrepresentation, conversion, and fraudulent/intentional misrepresentation.  Triche has now filed a motion for partial summary judgment, seeking to have plaintiffs' state law claims of negligent misrepresentation, conversion, and fraudulent misrepresentation dismissed as prescribed under the applicable one (1) year prescriptive period.

## **LAW & ANALYSIS**

The Court first notes that Triche is correct in his assertion that plaintiffs' state law claims of negligent misrepresentation, conversion, and fraudulent misrepresentation are subject to the one (1) year prescriptive period applicable to torts under Louisiana law. *Hollingsworth v. Choates*, 42,424 (La. App. 2 Cir. 8/22/07), 2007 WL 2377031; *Jefferson v. Crowell*, 42, 177 (La. App. 2 Cir. 5/9/07), 956 So.2d 746.  Specifically, the applicable

prescriptive period runs one (1) year from the date when the plaintiff "knew or reasonably should have known" of the defendant's wrongful act. *Delpit v. Ansell, Inc.* 2004 WL 551206 (E.D. La. 2004)("[t]he prescriptive period for a fraud claim under Louisiana law is one year from the date plaintiff knew or reasonably should have known of [a] defendant[']s fraudulent act").

To prove negligent misrepresentation, the plaintiffs must establish that: (1) the defendant, in the course of his business or other matters in which he had a pecuniary interest, supplied false information; (2) the defendant had a legal duty to supply correct information to the plaintiff; (3) the defendant breached his duty, which can be breached by omission as well as by affirmative misrepresentation; and (4) the plaintiffs suffered damages. *Systems Engineering and Security v. Science & Engineering Associates, Inc.*, 2006-0974 (La. App. 4 Cir. 6/20/07), 962 So.2d 1089, citing *Kadlec Medical Center v. Lakeview Anesthesia Assoc.*, 2005 WL 1309153 (E.D. La. 2005). As to their claim of conversion, plaintiffs must prove an act in derogation of their possessory rights or any wrongful exercise or assumption of authority of their goods, such as a transfer of their investment funds without authority. *Jefferson v. Crowell*, 42,177 (La. App. 2 Cir. 5/9/07), 956 So.2d 746. Finally, to succeed in a claim for intentional/fraudulent misrepresentation, the plaintiffs must prove: (1) a misrepresentation of material fact; (2) made with the intent to deceive; and (3) which causes justifiable reliance with resulting injury. *Systems*, at 1091, citing *Goodman v. Dell Publishing Co.*, 1995 WL 428602 (E.D. La. 1995).

In the present motion for partial summary judgment, Triche contends that plaintiffs either knew or reasonably should have known that he had engaged in the alleged conduct which constitutes the above three torts more than one (1) year prior to filing the present suit on January 10, 2007.  The Court agrees.  Specifically, the Court finds that plaintiffs' own allegations in their original and amended complaints indicate that they had knowledge that Buhler's financial situation had been negligently and/or fraudulently misrepresented to them in the prospectus in December 2005.  In their complaints, they allege that, contrary to the representations in the prospectus of Buhler's financial success in the antique and auction business, they later learned that Buhler and his antiques and auction businesses were actually experiencing "extreme financial difficulties" at the time the prospectus was prepared and that they learned of such financial difficulties (*i.e.*, that Buhler owed banks over one million dollars; that he needed to mortgage his house three times to raise cash; that creditors had filed, or were about to file, lawsuits against him for unpaid debts; and that there were judgments against him and his businesses in excess of $100,000.00) on December 6, 2005, when Buhler filed a Voluntary Petition in Bankruptcy in the United States Bankruptcy Court for the Middle District of Louisiana.

Although the plaintiffs subsequently attempted to amend their complaint a third time, in response to Triche's filing of the present motion for partial summary judgment, in an effort at saving their claims from prescription because of the above allegation in their original and prior amended complaints,[1] the Court nevertheless concluded that such a third

---

[1] Plaintiffs sought to amend their complaint to state that they did not acquire knowledge of Buhler's financial difficulties until February 14, 2006, when Bulher filed his financial schedules subsequent to December 6, 2005, when he filed a Voluntary Petition in Bankruptcy in the United States District Court for the Middle District of Louisiana.  *See*, Motion for Leave to File Third

amendment to the complaint should not be allowed because it was sought after the deadline for doing so set forth in the scheduling order and because such attempt was a "mere, self-serving effort to save [the plaintiffs'] state law claims from the prescriptive bar in response to defendant's summary judgment motion – an effort which will not be countenanced by the Court." *See*, September 21, 2007 Ruling, R. Doc. 55.

With their opposition to the present motion, plaintiffs again attempt to save their state law claims by submitting affidavits stating exactly what their third amended complaint would have said had the Court allowed it – *i.e.*, that they did not become aware that the prospectus contained misrepresentations until February 14, 2006, when Bulher filed his financial schedules in his voluntary bankruptcy proceedings. Such self-serving affidavits simply do not constitute competent summary judgment evidence upon which the Court can rely. *Grimes v. Tex. Dep't of Mental Health and Mental Retardation*, 102 F.3d 137, 139-140 (5th Cir. 1996)(Self-serving and unsubstantiated statements by a plaintiff do not serve as competent summary judgment evidence).[2]

Furthermore, Triche has presented other competent facts and evidence demonstrating that plaintiffs were aware of their potential claims against Triche for negligent/fraudulent misrepresentation and conversion for over a year prior to the filing of

---

Amended Complaint, R. Doc. 50.

[2] *See also, Nilsson v. City of Mesa*, 2007 WL 2669788 (9th Cir. 2007)(A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact, as required to avoid summary judgment); *BMG Music v. Martinez*, 74 F.3d87, 91 (5th Cir. 1996)(affirming summary judgment for the plaintiffs where "the only evidence in support of the defendant's theory is a conclusory, self-serving statement by the defendant); *Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073 (10th Cir. 2006); *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 531 (5th Cir. 2005), citing *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001).

5

this suit. Triche first explains, in his supporting memorandum, that the present suit is only the most recent of numerous attempts by the plaintiffs to recover the funds they purportedly invested with Buhler and AIG. Specifically, Triche points out that, on October 3, 2005, the plaintiffs sued Buhler in St. Tammany Parish, Suit No. 2005-14624, in an effort at recovering their invested funds. That case was removed to the United States District Court for the Eastern District of Louisiana, Civil Action No. 06-0194; then transferred to this Court, Civil Action No. 06-00096; and ultimately transferred to the United States Bankruptcy Court for the Middle District of Louisiana. The plaintiffs also assumed positions as "creditors" and forced AIG into an involuntary Chapter 7 bankruptcy proceeding on October 11, 2005, Case No. 05-13991, United States Bankruptcy Court, Middle District of Louisiana. They again alleged that they were creditors in Buhler's personal bankruptcy action filed on December 6, 2005, Case No. 05-15365, United States Bankruptcy Court, Middle District of Louisiana. Finally, plaintiff Hamley even filed an independent suit on June 29, 2005, in the 19th Judicial District Court, Suit No. 533,763, in an attempt at recovering on his promissory note.

Although the plaintiffs' filing and/or participation in the above legal actions alone does not necessarily indicate that the plaintiffs had actual or constructive knowledge that they were victims of negligent/fraudulent misrepresentation and conversion at the hands of the defendants, it certainly indicates that they were attempting to recover the funds they had invested with Buhler and AIG, and when considered in combination with the above-referenced allegations in their original and amended complaints in this suit along with certain deposition testimony and affidavits provided in their prior suits, it appears the plaintiffs knew of the defendants' alleged wrongful acts for well over a year prior to filing this

suit.  For example, in his deposition in the context of the AIG Chapter 7 bankruptcy proceeding,[3] plaintiff Hamley specifically testified that, in 2005, he communicated with the other plaintiff investors by phone and email, and they set up a meeting with Buhler at his Warehouse 212 to find out whether Buhler was utilizing their invested funds as the prospectus indicated he would.  According to Hamley, during that meeting, Buhler admitted that he had used the funds they had invested for purposes other than those designated in the prospectus, including for his personal purposes.[4]

---

[3] In response to the Court's Ruling dated October 3, 2007 (R. Doc. 60), wherein the Court ordered Triche to supplement his Motion for Partial Summary Judgment with proper authenticating evidence, Triche produced copies of the cover pages and reporter's certifications for each deposition excerpt he submitted as evidence.  Although plaintiffs' counsel objected to Triche's submissions to the Court, insinuating that, because the reporter's certification pages submitted by Triche were different from the reporter's certification pages attached to plaintiffs' counsel's copies of the depositions, Triche's exhibits had not been sufficiently authenticated, the Court finds Triche's explanation for the differences in the certification pages acceptable.  Specifically, Triche's counsel has explained to the Court, in a response to plaintiffs' objections (R. Doc. 64), that the deposition excerpts submitted with his summary judgment motion were derived from copies of the original deposition transcripts, whereas plaintiffs' counsel's differing copies were derived from unsigned, condensed versions of the deposition transcripts.  This explains why the reporter's certifications are not identical.  Because Triche has now submitted the cover pages for the deposition excerpts as well as the reporter's certification pages for those depositions, the excerpts have been properly authenticated.  Moreover, as noted in the Court's October 3, 2007 Order, the sworn deposition testimony of the plaintiffs, which was lawfully taken in the context of prior litigation involving the parties herein, can properly be considered in connection with the present motion.  *Gulf USA Corp. v. Federal Ins. Co.*, 259 F.3d 1049 (9th Cir. 2001); *Westernland Corp. v. Crawford Merz. Co.*, 62 F.R.D. 550 (D.C.Minn. 1973); *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).  Finally, since the statements in Hamley's deposition concerning what he was told by Buhler constitute admissions by a party-opponent, the statements are admissible herein pursuant to Fed. R. Evid. 801(d)(2)(A).

[4] The fact that Buhler indicated he only used the plaintiffs' invested funds for other purposes for a short time period is of no consequence, as the plaintiffs nevertheless became aware at the time of their meeting with Buhler that he had used funds for purposes other than those designated in the prospectus, and they were therefore aware of misrepresentations in the prospectus and of conversion of their invested funds for Buhler's personal use.

Finally, Triche has submitted with his motion affidavits of Hamley and Heck from prior litigation against Buhler and AIG.  Those affidavits, which the Court previously determined to be competent summary judgment evidence in its October 3, 2007 Ruling, were prepared in October 2005 and indicate plaintiffs' knowledge at that time of the following:  that none of the promised reports of AIG were ever provided; that despite requests for bank statements, Buhler and AIG failed to provide such records; that, after soliciting the plaintiffs' investments, Buhler admitted AIG was undercapitalized;[5] that, although it was represented that the invested money would be used exclusively for the purpose of purchasing antiques for inventory in which Buhler granted the plaintiffs a security interest, none of the money advanced was accounted for, other than Buhler admitting that he commingled the "invested funds" with his personal funds;[6] and that Buhler purchased items for personal use using AIG funds.[7]  Considering those attestations on the

---

[5] That attestation indicates actual or constructive knowledge of a misrepresentation in the prospectus concerning the financial stability and success of Buhler and his antiques and auction entities.  The deposition of plaintiff McKearn, at page 40, also indicates that he was aware, at least by the Spring of 2005 if not before, that Buhler was in "such dire financial straights" that the expense of having a CPA actually prepare the accounting reports for AIG would have "tilt[ed Buhler] to the other side."  *See*, Deposition of McKearn, attached to Triche's reply, Exhibit G, p. 40, lines 2-9.  On page 41 of his deposition, McKearn further indicates his knowledge of Buhler's financial instability from the "get-go" because Buhler was late on rent payments, and McKearn had received several "bounced checks" from Buhler.  *See,* Exhibit B to Triche's motion, p. 41.  McKearn also testified in his deposition, at pages 53-54, that, when he filed his UCC-1 Financial Statement at the end of 2004, he "realized [Buhler] was going south for the winter," suggesting McKearn's awareness of the financial instability of Buhler and AIG and the fact that First Bank's lien position primed his investment.  *See*, Exhibit G to Triche's reply, p. 53-54.

[6] That attestation indicates actual knowledge of negligent/fraudulent misrepresentation in the prospectus.

[7] That attestation also indicates actual knowledge of negligent/fraudulent misrepresentation in the prospectus and of conversion of the plaintiffs' funds for Buhler's personal use without the plaintiffs' authorization.

8

part of Hamley and Heck back in October 2005, in conjunction with all of the evidence discussed above, it appears that the plaintiffs had the requisite actual or constructive knowledge of the defendants' alleged wrongful acts well over a year before they filed this suit.[8]

---

[8] Various emails submitted as evidence by Triche also provide further support for the finding that the plaintiffs had knowledge of the defendants' alleged wrongful and fraudulent acts in 2005.  *See*, Exhibit H to Triche's motion, an email dated April 1, 2005, between two of the plaintiff investors, Allen Richardson ("Richardson") and Joseph McKearn ("McKearn"), wherein they agree upon each other's assessment of Buhler and his activities and that "filing fraud charges with the proper authorities" related to such activities may be necessary; Exhibit I to Triche's motion, an email dated January 29, 2005 from Richardson to Buhler, wherein Richardson points out Buhler's failure to comply with the representation in the prospectus that the records and books would be reviewed by an independent local CPA firm and sent to investors in a timely manner and requesting a completed inventory schedule, a detailed balance sheet, and an income statement for investors; Exhibit J, another email dated February 16, 2005 from Richardson to Buhler, regarding the completed inventory schedule that investors still had not received, despite request, and specifically indicating that Richardson was "starting to understand [McKearn's] attitude regarding all the promises not kept [by Buhler] on rent" and that Richardson was "losing patients [sic] and would prefer [Buhler] to tell the truth and do what [he said]"); Exhibit F to Triche's reply, an email from Buhler to the plaintiff investors dated March 1, 2005, wherein he concedes that he has not kept the investors sufficiently apprised of the status of AIG and their investments through financial records and updates and advises them of his "upside down" financial situation because of his line of credit at First Bank.

Although plaintiffs' counsel objected to the admission of the above emails, the Court explained, in its October 3, 2007 Order, that emails can serve as proper summary judgment evidence as long as they are properly authenticated or shown to be self-authenticating.  Because the emails in question were produced by plaintiffs' counsel as part of plaintiffs' Rule 26(a)(1) Initial Disclosures, indicating that such documents may be used by the plaintiffs to support their claims, such documents have been properly authenticated and may be considered by the Court in connection with a summary judgment motion.  The Court agrees with Triche that it is irrelevant that plaintiffs' present counsel obtained such email documents from their prior attorney and may be unaware of the documents' exact origins because the mere fact that such documents were produced by plaintiffs during discovery authenticates the documents for purposes of this motion.

*See*, 31 Fed. Prac. & Proc. Evid. §7105 ("Authentication can [ ] be accomplished through judicial admissions such as stipulations, pleadings, and production of items in response to subpoena or other discovery request"); *John Paul Mitchell Systems v. Quality King Distribution, Inc.*, 106 F.Supp.2d 472 (S.D.N.Y. 2000)(a defendant's act of producing documents in response to a request for production implicitly authenticates the documents produced); *Architectural Iron Workers Local No. 63 Welfare Fund v. United Contractors, Inc.*, 46 F.Supp.2d 769 (N.D. Ill. 1999)(Documents produced in response to discovery are self-authenticating); *In re*

Furthermore, the plaintiffs have failed to sufficiently refute the evidence of their knowledge that has been presented by Triche.  As mentioned above, the only evidence submitted with the plaintiffs' opposition is their own self-serving affidavits.  Those affidavits indicate that the following actions by Buhler did not make any of them believe that the prospectus written two years earlier may have contained misrepresentations:  late payments of rent by Buhler in 2005 relative to Warehouse 212 and its "N.S.F. checks;" the slowing down or stopping of dividend checks by AIG to the plaintiffs; Buhler's alleged use for personal purposes of some of AIG's money for less than a day; and the tardiness of AIG in furnishing updated records and books, bank statements, and in completing a physical inventory and a business plan.  Finally, as discussed above, plaintiffs attest in their present affidavits, contrary to the assertions in their original and first two amended complaints in this matter, that they did not have knowledge of Buhler's financial difficulties (and that the prospectus contained misrepresentations in that regard) until Buhler filed his financial schedules in the context of his Voluntary Bankruptcy Proceeding on February 14, 2006.

It is simply unreasonable for the Court to now credit plaintiffs' present affidavits, wherein they essentially "play dumb" as to any knowledge of Buhler's financial difficulties and of misrepresentations and conversion of their invested funds until Buhler filed his financial schedules in February 2006, when prior sworn statements and an allegation filed on three separate occasions in their original and amended complaints in this matter

---

*Homestore.com, Inc. Securities Litigation*, 2004 WL 2792461 (C.D.Cal. 2004); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F.Supp.2d 966 (C.D.Cal. 2006)(Production of documents by defendant in discovery was sufficient circumstantial evidence for a reasonable jury to find the documents authentic, despite defendant's allegation that plaintiffs had not properly authenticated the documents; the defendant did not contend that the documents were not what plaintiffs purported them to be).

contradict their present affidavits and indicate that they were actually aware of such information in 2005. The Court views plaintiffs' present affidavits as yet another attempt – one in a long line of attempts discussed above -- to save their claims against the defendants and recover the funds they invested with Buhler and AIG. While plaintiffs certainly still have viable claims against the defendants under the securities laws and for breach of contract at this juncture, their state tort claims against the defendants are clearly prescribed and should be dismissed. Accordingly, Triche's motion for partial summary judgment should be granted.[9]

---

[9] Plaintiffs also argue in their opposition that Triche's partial summary judgment motion only addresses one of twelve misrepresentations and omissions of material fact allegedly contained in the prospectus and alleged in Counts IV, V, and VII of plaintiffs' complaints. They contend that the evidence submitted by Triche does not prove that they had knowledge of the following eleven additional misrepresentations and omissions of material fact for over a year prior to their filing of this suit: (1) Participation in this investment opportunity is open to a limited number of investors, when, in fact, participation was not exclusive at all, but was open to anyone who would purchase an investment contract; (2) The proceeds from the sale of the investment contracts were to be used to buy inventory pool items, when, in fact, Triche had advised Buhler that he could use the proceeds to pay his business debts and personal bills; (3) The inventory pool will fully collateralize the loans, when, in fact, Triche had determined that he would have Buhler pledge the inventory pool to First Bank, whose security interest would prime the security interest of plaintiffs; (4) A local CPA firm will provide the investors with independent accounting and oversight, when, in fact, Triche and Associates, the local CPA firm, was not going to provide the Plaintiffs with independent accounting and oversight; (5) Buhler owned one of the most successful antiques and auction houses in the south, when, in fact, Buhler owned no such thing, he had just been fired by Go Antiques, and he was attempting to start all over again; (6) Buhler had been recognized as the 75th largest antique dealer in the United States, when, in fact, Buhler had no business and was trying to start all over again in the antique business after being fired by Go Antiques; (7) Buhler has earned the respect and trust of his customers over the years, when, in fact, Buhler had been sued by customers for converting to his own use the antiques consigned to him for sale; (8) Buhler capitalized on his auction business experience to earn a significant portion of its revenues, when, in fact, Buhler was not conducting any auctions, and was under investigation by the State of Louisiana, and was about to lose his auctioneer's license; (9) Plaintiffs' funds would be used to stock the proposed new warehouse/showroom and strategically selected retail stores in specific high traffic locations, when, in fact, Triche told Buhler he could use some of the funds to pay his business debts and personal bills, and no retail stores were even planned; (10) All investments are secured by the inventory purchased, and your investment is secured by inventory, when, in fact, Triche had told Buhler to pledge all of the inventory purchased to First Bank giving First Bank a security interest that would prime the security interest given to Plaintiffs, thus, affording Plaintiffs no security

## **RECOMMENDATION**

For the above reasons, it is recommended that the Motion for Partial Summary Judgment (R. Doc. 46) filed by defendant, Wayne Triche, should be **GRANTED**, and

---

whatever; and (11) Triche did not disclose in the Prospectus that he was a director and shareholder of First Bank and was going to have Buhler pledge all of the inventory purchased with Plaintiffs' funds to First Bank to enhance the bank's financial position so that State Bank would go forward with the purchase of First Bank, in a transaction in which Triche was to make a substantial profit.

Plaintiffs contend, in their opposition to the present motion, that they were not aware of each of the above misrepresentations until February 14, 2006, when Buhler filed his bankruptcy schedules. However, the Court disagrees with the plaintiffs' attempt to break down their overall state law claims of misrepresentation and conversion into distinct categories of misrepresentation for purposes of prescription. The plaintiffs need not have been aware of every single alleged misrepresentation or wrong committed by Buhler, Triche and Dearmond to have actual or constructive knowledge of a potential claim against them. Instead, they simply either needed to know or reasonably should have known that the defendants had committed some act which fulfilled the requisite elements of conversion and negligent/fraudulent misrepresentation (which, as indicated by the above competent evidence, occurred well over a year before this suit was filed).

Furthermore, the Court agrees with Triche that the eleven categories of misrepresentations above can be better grouped into three (3) overall groups: (1) allegations regarding the use of investment money/record-keeping/accounting; (2) facts about Buhler and his financial condition; and (3) ranking of AIG pool of inventory against the secured claim of First Bank. As discussed above, the deposition testimony, affidavits, and emails submitted by Triche with his motion indicate that the investor plaintiffs had knowledge, at least by the Spring of 2005, of the above three categories of wrongs or conduct – specifically, that: (Category 1) Buhler was using the invested funds for reasons other than those represented in the Prospectus, including for his personal use; that the invested funds were being commingled with Buhler's personal funds; that Buhler had not maintained proper/timely financial and accounting records; that independent accounting and oversight were not being provided by a local CPA firm; and that "fraud charges" may need to be filed against Buhler; (Category 2) that Buhler had not kept them sufficiently apprised of the status of AIG and their investments through financial records and updates; and (Category 3) that Buhler had an "upside down" financial situation because of his line of credit at First Bank, as described in detail in Buhler's email to the investors dated March 1, 2005.

plaintiffs' state law claims against Triche for negligent and fraudulent/intentional misrepresentation and conversion should be **DISMISSED WITH PREJUDICE** as prescribed.

Signed in chambers in Baton Rouge, Louisiana, November 6, 2007.

_____
**MAGISTRATE JUDGE CHRISTINE NOLAND**